**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH LANGAN and LORA LANGAN, husband and wife, individually, and as the Parents and Legal Guardians of OWEN PATRICK LANGAN, a minor, : : : : : : | |
| Plaintiff, : | Civil Action No. 04-4138 |
| v. : | **OPINION** |
| BJ'S WHOLESALE CLUB, INC., a foreign : corporation, : | |
| Defendant, : | |
| and : | |
| BJ'S WHOLESALE CLUB, INC., a foreign : corporation, : | |
| Defendant/ : Third-Party Plaintiff, : | |
| v. : | |
| BURRIS REFRIGERATED LOGISTICS, : | |
| Third-Party Defendant, : | |
| and : | |
| BURRIS REFRIGERATED LOGISTICS, : | |
| Third-Party Defendant/ : Fourth Party Plaintiff, : | |
| v. : | |

```
SMITHFIELD FOODS, INC., d/b/a            :
MOYER PACKING COMPANY, a foreign         :
corporation, and TAYLOR PACKING CO.,     :
INC., a foreign corporation,             :
                                         :
            Fourth-Party Defendants.     :
_____  :
```

**KATHARINE S. HAYDEN, U.S.D.J.**

This opinion addresses the motion for summary judgment filed by plaintiffs Joseph and Lora Langan ("Langans" or "plaintiffs") on their strict liability claim against defendant BJ's Wholesale Club ("BJ's" or "defendant"). Also before the Court are motions for summary judgment filed by Burris Refrigerated Logistics ("Burris"), BJ's Wholesale Club, Inc. ("BJ's"), Moyer Packing Company, Inc. ("Moyer"), and Smithfield Foods, Inc. ("Smithfield"), and Taylor Packing Company, Inc. ("Taylor"). Based on the Court's ruling, which grants the Langans' motion, the other motions will be denied without prejudice to re-filing, pending further case management by Magistrate Judge Shwartz.

**I.    BACKGROUND**

In 2002, there was an outbreak of three *E. coli* O157:H7 infections in the New York/New Jersey area. The New York State Department of Health ("NYSDOH") investigated the two incidents in Orangeburg, New York, and found that they were linked to 90% lean ground beef sold by BJ's Wholesale Club, Inc. ("BJ's"). (Pls's Br. on Strict Liability at ¶ II, Statement of Undisputed Facts ("Statement of Undisputed Facts") at 2, 3, 12.) Joseph and Lora Langan of New Jersey are the parents of the third victim, Owen Langan, who was six years old at the time of the incident.

Owen became sick on May 28, 2002; he was admitted to the hospital two days later and

diagnosed with an *E. coli* infection and Hemolytic Uremic Syndrome ("HUS"), a complication of *E. coli* that can be fatal. (Statement of Undisputed Facts at 4.) Owen survived, but sustained permanent damage to his kidneys. (Statement of Undisputed Facts at 4.) The NYSDOH conducted a pulsed field gel electroporesis ("PFGE"), which showed that Owen's stool sample displayed *E. coli* indistinguishable from both of the victims in Orangeburg, New York. (Statement of Undisputed Facts at 6, 12.) The *E. coli* was also shown to be indistinguishable from a sample taken from an unopened package of 90% lean ground beef from BJ's Nyack store that was purchased by Joy Fojtlin.

The Bergen County Health Department ("BCHD") found that Owen had consumed 90% lean ground beef purchased by friends of the family at the BJ's store in Paramus, New Jersey on May 11, 2002 and May 14, 2002. (Statement of Undisputed Facts at 7.) Both New York and New Jersey health officials concluded that Owen's *E. coli* was caused by 90% lean ground beef purchased at BJ's. (Statement of Undisputed Facts at 16.) BJ's expert, Public Health Microbiologist and Molecular Epidemiologist Dr. Mansour Samadpour, in his Report, does not disagree, concluding that "the most likely sources of *E. coli* O157:H7 ... is the incoming beef." (BJ's Opp'n at Ex K; Langan Br., Ex. 6 "Report of Dr. Mansour Samadpour," at 2.)

On August 25, 2004, the Langans filed this lawsuit, alleging that the 90% lean ground beef sold at BJ's Paramus store was the source of the bacteria that caused Owen's infection. (See Complaint.) BJ's made third-party claims against several upstream suppliers, who have filed cross-claims and motions for summary judgment.

Plaintiffs indicate in their brief that on June 10, 2005, Magistrate Judge Shwartz conducted a telephone conference with the parties, during which the participants agreed that the

3

source of the *E. coli* infection was, in fact, the 90% lean ground beef purchased on May 11, 2002 at the Paramus BJ's store, and that as a consequence this issue would not be in dispute. (Pls' Br. at 8.) Notwithstanding, no stipulation was entered. (Pls' Br. at 9.) Plaintiffs now move for summary judgment on grounds that under New Jersey's Products Liability Act, N.J.S.A. § 2A-58C-1, *et seq.*, ("the Act"), BJ's is strictly liable to them.

## II.     SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment may be granted by the Court only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon review of the pleadings, if the Court believes there is any genuine issue of material fact upon which a reasonable trier of fact could differ, the judge must allow the case to go to trial. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983), cert. dismissed, 465 U.S. 1091 (1984).

The substantive law defining the claims determines whether a fact is "material," and only if the disputed facts may affect the outcome of the suit under the law may a court properly deny summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); United States v. 225 Cartons, 871 F.2d 409, 419 (3d Cir. 1989). If sufficient evidence supporting the claimed factual dispute is shown to require a judge or jury to resolve the parties' differing versions of the truth at trial, summary judgment is not appropriate. Id. at 249. If the movant establishes the absence of a genuine issue of material fact, the burden shifts to the nonmovant to do more than

"simply show that there is a metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

Once a summary judgment motion has been made, the non-moving party has the affirmative burden of "coming forward with specific facts evidencing the need for trial." Marietta v. United Parcel Service Inc., 749 F. Supp. 1344, 1359 (D.N.J. 1990). If the nonmovant can produce evidence suggesting that a reasonable trier of fact could rule in its favor, the court cannot grant the motion for summary judgment. Healey v. New York Life Ins. Co., 860 F.2d 1209, 1219 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989).

## III. DISCUSSION

Strict liability claims are governed by the New Jersey Products Liability Act ("the Act"). N.J.S.A. §2A:58C-1 et. seq. Pursuant to the Act, manufacturers and sellers are strictly liable for damages resulting from the use of their products if those products are defective. N.J.S.A. §2A:58C-2. A product is defective if it is

> not reasonably fit, suitable or safe for its intended purpose because it: a) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b) failed to contain adequate warnings or instructions, or c) was designed in a defective manner.

N.J.S.A. §2A:58C-2. Plaintiffs argue that the record demonstrates that the issue of defectiveness is established, and that BJ's has not provided evidence to put the necessary elements in dispute and must be found strictly liable. Specifically, plaintiffs allege that there is no dispute as to the following facts:

1) BJ's manufactured and sold the 90% lean ground beef that was consumed by Owen Langan.

2)   The 90% lean ground beef was contaminated with *E. coli* O157:H7, which made it "defective" pursuant to the Act because it "deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. §2A:58C-2.

3)   Owen Langan was infected with *E. coli* O157:H7 as a result of consuming the 90% lean ground beef from BJ's.

BJ's opposition claims that "there is a genuine issue of material fact as to whether the meat purchased from BJ's in May of 2002 was contaminated with *E. coli*, and whether Owen Langan's *E. coli* infection came from the meat..." (BJ's Opp'n at 4.)  First, BJ's argues that the contaminated meat may not have been from its Paramus store, on grounds that "[t]here is no evidence that the meat consumed by Owen Langan from the BJ's Paramus store was ever tested. In fact, the BJ's meat that was tested was from the West Nyack store...." (BJ's Opp'n at 4.) Second, BJ's contends that there is an issue of material fact as to causation because Owen Langan displayed symptoms later than the 10 days' typical incubation period of *E. coli*. (BJ's Opp'n at 4.)

**A.   The Source of the Meat**

The 90% lean ground beef was sold by BJ's under its own trade name, making it both the manufacturer and seller of the product. (See BJ's Answer No. 23 to Plaintiffs' First Set of Interrogatories to BJ's.) BJ's interrogatory responses confirm that it manufactures this product by using raw materials it purchases for that purpose, and that BJ's grinds, packages, labels, and then sells the ground beef.   (See BJ's Answer No. 23 to Plaintiffs' First Set of Interrogatories to BJ's.) BJ's does not dispute that Owen Langan used the product as intended.

The Act defines manufacturing as:

6

> (1) any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product;  (2) a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale; (3) any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or (4) a United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary.

N.J.S.A. §2A:58C-8.

In this scenario, there are upstream suppliers, as the caption and the motion activity in this lawsuit reflect.[1]  BJ's stated in its interrogatories that it "received the 90/10 ground beef from Burris.  Burris received 225 cases of 90/10 from Moyer. ... BJ's ... regrinds the meat to a finer consistency and repackages it for sale to the customer."  (BJ's Answer No. 16 to Plaintiffs' First Set of Interrogatories to BJ's.)  But these facts do not change the statutory application to BJ's.  The Court finds that by grinding, repackaging, and labeling the product, BJ's meets the Act's definition as seller and manufacturer.  N.J.S.A. §2A:58C-2.

**B.      The Meat Was Contaminated with *E. coli*, Which Constitutes a "Defect"**

Notwithstanding BJ's attempt to argue here that a genuine dispute has been raised about whether there was *E. coli* in the ground beef that Owen Langan ate, the Court finds that the record establishes otherwise.  BJ's own expert, Dr. Mansour Samadpour, the Director of the Institute for Environmental Health, Inc., states that Owen Langan "consumed the [90% lean ground beef purchased from BJ's] on May 11th (as a hamburger) and May 14th (as meatloaf). ...

---

[1] After BJ's brought suit against Burris, its supplier, Burris brought suit against both Taylor and Moyer, and Taylor and Moyer counterclaimed against Burris and each other.  On January 23, 2006, all of the plaintiffs, with the exception of Moyer, agreed to dismiss all claims against Taylor.  (See January 23, 2006 Stipulation and Dismissal.)  On February 17, 2006, Taylor filed a motion for summary judgment in which it sets forth reasons in support of dismissal of Moyer's contribution and indemnity claims against it.  (See Taylor Br.)

[Langan's] onset of infection was on May 28th, 2002." (BJ's Opp'n, Ex. K; Langan Br., Ex. 6 "Report of Dr. Mansour Samadpour," at 2.) He opines, "[t]he most likely sources of *E. coli* O157:H7 in a grocery store's meat department is the incoming beef." (Report of Dr. Mansour Samadpour at 2.) Dr. Samadpour further states that he believes that the contamination occurred while the meat was in the possession of "the common supplier" to both the BJ's Paramus and BJ's West Nyack locations: "the most likely source of contaminated ground beef was the common supplier of lean coarse ground beef to the two locations at the time in question." (Report of Dr. Mansour Samadpour at 3.) Evidently he is not disputing that the contaminated beef was sold by BJ's; rather, he takes issue with whether the contamination occurred before it reached BJ's or after. In addition to BJ's own expert's conclusion, both New York and New Jersey health officials concluded that the plaintiff's *E. coli* infection was linked to the 90% lean ground beef Owen consumed from BJ's. (Statement of Undisputed Facts at 16.)

Under the statutory scheme for strict liability, a product is defective where it deviates "from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. §2A:58C-2. Here, the contamination with *E. coli* created a defect, as this was a deviation from the expected performance standard of the meat. In addition, the *E. coli* contamination violated New Jersey law prohibiting the sale of food items that are "injurious to health." This includes any "adulterated" food, which is one that:

> A.(2) ... contains any added poisonous or added deleterious substance which is unsafe within the meaning of regulations promulgated by the Department of Health limiting the quantity therein or thereon to such extent as the Department of Health of the State of New Jersey find necessary for the production of public health; or

>   (4) If it has been produced, prepared, packed, or held under unsanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health.

N.J.S.A. §24:5-8.  Thus, under New Jersey law, *E. coli* contamination would be considered "adulterated."  Finally, the federal Department of Agriculture considers *E. coli* O157:H7 a *per se* adulterant in ground beef.  Texas Food Meat Industry Assoc. v. Espy, 870 F.Supp. 144, 145 (W.D. Tex. 1994) (upholding the USDA's decision to treat *E. coli* O157:H7 as an adulterant *per se* and rejecting the meat industry's argument that such treatment was arbitrary and capricious).

The record, therefore, establishes that the ground beef sold by BJ's was contaminated with *E. coli* by evidence that is not only not controverted by BJ's, but actually supported in the Report of its expert.

**C.    The Defective Meat was the Cause of Owen Langan's *E. coli* Infection**

Plaintiffs argue that it is undisputed that the meat sold by BJ's was the cause of Owen Langan's *E. coli* poisoning.  (Pls' Br. at 13.)  The strain of *E. coli* that was identified as being present in the ground beef Owen consumed was determined to be identical to that found in the unopened 90% lean ground beef sold at BJ's in May of 2003.  BJ's admits, moreover, that this strain is the same as the *E. coli* that infected the other two victims in New York.  (See BJ's Response Number 8 to Plaintiffs' First Requests for Admission, stating that "... it is admitted that the PFGE results indicate that the strains of *E. coli* that infected Owen Langan and Christina Graff were the same."  See also Response Number 10, stating that "... it is admitted that records of testing of the samples indicate that the strain of E. coli isolated from the ground beef referenced in Request No. 10 [relating to the samples collected from the freezer of the other child infected in New York, Katelyn Koesterer] is the same as that which infected Owen

9

Langan."). And in BJ's Response Numbers 14 and 15 to Plaintiffs' First Requests for Admission, BJ's admits that the contaminated meat that infected these victims came from its West Nyack store. Health officials in New York and New Jersey concluded the meat from BJ's was the cause of the *E. coli* poisoning. (See Pls' Br. at Ex. 4, BJ's Opp'n, Ex L, "Kobayashi Expert Report" at 1-2. See also Samadpour Expert Report at 1-2.) Consistent with this official conclusion, BJ's first response to plaintiffs' first requests for admission on September 14, 2005 stated that "the current evidence ... indicates that the source of Owen Langan's *E. coli* infection was 90% lean ground beef purchased on May 11, 2002, at BJ's Wholesale Club located ... [in] Paramus, New Jersey." (Pls' Br. at Ex. 1, Pls' First Requests for Admission to BJ's.)

To defeat a motion for summary judgment, "the adverse party ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, "[t]he mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The Court finds that BJ's has failed to demonstrate that there are any material facts in controversy with respect to plaintiffs' allegations for their strict liability claim against it. BJ's contends that there is an issue of fact surrounding the origin of the contaminated meat because "[t]here is no evidence that the meat consumed by Owen Langan from the BJ's Paramus store was ever tested. In fact, the BJ's meat that was tested was from the West Nyack store..." (BJ's Opp'n at 4.) It also argues that plaintiffs' expert, Dr. Kobayashi, was in error in concluding that because the *E. coli* that infected Owen Langan matched that of Christina Graff, who was infected by beef from another BJ's location, it was more likely than not that the source of

Owen's infection was BJ's store in Paramus. BJ's states, "there is also an *E. coli* match between a sample taken from another person in April of 2002 before any meat was ever distributed to BJ's for purchase ... and ultimate consumption by Owen Langan." (BJ's Opp'n at 4.) However, there is no evidence set forth in support of this contention.

      Similarly, BJ's unconvincingly argues that because "[i]n the Spring of 2002, the North Carolina Department of Health and Human Services determined that a PFGE pattern which matched Owen Langan and Christina Graff from one patient who had eaten at Chuck E. Cheese seven (7) days before the onset of illness," Owen may have been exposed to *E. coli* from food at Chuck E. Cheese. (BJ's Opp'n at 2-3, citing Exhibit A.) The facts do not support this conclusion. The letter attached as "Exhibit A" in support of this "undisputed fact" merely states that it concluded an investigation into "patients diagnosed with *E. coli* O157:H7 determined to have the PFGE patterns that match New York and New Jersey persons in spring of 2002 ..." (BJ's Opp'n at 2-3, citing Exhibit A.) Although the burden on the adverse party to defeat summary judgment is relatively light, it does require at least some "specific facts" beyond a "mere ... scintilla of evidence," demonstrating a need for trial. Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 252. Mere speculation that the investigation performed by the North Carolina Department of Health and Human Services, which showed a match between the infection of some "New York and New Jersey persons" and the *E. coli* at Chuck E. Cheese in North Carolina, means that the source of the contamination was Chuck E. Cheese, is not enough to defeat summary judgment in the face of substantial evidence stating otherwise.

      Of far more moment is that New York and New Jersey health officials have concluded that BJ's was the source of the meat, and BJ's own expert, Dr. Samadpour, assumes this fact as

11

true. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

BJ's also argues that there is an issue of material fact as to causation because Owen Langan displayed symptoms of *E. coli* more than 10 days after consuming the meat from BJ's, and the typical incubation period of *E. coli* is 10 days. (BJ's Opp'n at 4.) BJ's states that because this incubation period is outside of the "normal" range, there is no link to the meat purchased from BJ's. The argument that because Owen's infection took approximately 14 days to incubate, rather than 10, there was no link to BJ's, is unpersuasive in the context of the other evidence, and insufficient to preclude summary judgment. See Sterling Nat. Mortg. Co., Inc. v. Mortgage Corner, Inc., 97 F.3d 39, 45 (3d Cir. 1996) ("[m]ere speculation about the possibility of the existence of ... facts does not" warrant a trial). An examination of the facts of record leads to the opposite conclusion, establishing that "on a more likely than not basis, ... the source of Owen Langan's ... infection was contaminated ground beef purchased at BJ's. ... His illness coincided with illnesses in children residing in nearby Orangeburg, NY. Comprehensive molecular testing demonstrated that Owen Langan, the Orangeburg children, and ground beef samples were all contaminated with the same strain of E. coli. ... The ground beef was purchased within a 24-hour period at BJ's. ..." (Langan Br. at Ex. 4, BJ's Opp'n, Ex L, "Kobayashi Expert Report" at 1-2.)

BJ's last argument is that because Owen "went swimming in a public pool and ate chicken prior to the onset of his symptoms," his *E. coli* could have been caused by something

other than the meat purchased from BJ's.  (BJ's Opp'n at 4.)  Again, a mere suggestion, without facts, that one could become contaminated with E. coli from a pool or consumption of chicken is not *evidence* that this, in fact, occurred here.  "Mere speculation about the possibility of the existence of such facts does not entitle [the opposing party] to go to trial."  Sterling Nat. Mortg. Co., Inc. v. Mortgage Corner, Inc., 97 F.3d 39, 45 (3d Cir. 1996).  See also Contini v. Cranmer, 117 Fed.Appx. 186, 190 (3d Cir. 2004) (stating that a plaintiff's case must be based on more than "mere speculation" to survive summary judgment).  The facts, on the other hand, point to the conclusion that the cause of the contamination was the meat purchased at BJ's.  (See Pls' Br. at Statement of Undisputed Facts at 16, stating "[b]oth New York and New Jersey health officials concluded that Owen's *E. coli* was caused by 90% lean ground beef purchased at BJ's."); see also Statement of Undisputed Facts at 20; see finally Report of Dr. Mansour Samadpour at 2, stating "the most likely sources of *E. coli* O157:H7 ... is the incoming beef.").  Thus, this argument would, at best, be considered a mere "metaphysical doubt," which is not enough to defeat summary judgment.

For the reasons stated above, the Court finds that BJ's has failed to adduce any evidence to demonstrate that a genuine issue of material fact exists concerning its liability to plaintiffs, and that the record supports a grant of summary judgment in plaintiffs' favor.  An appropriate order will be entered.

This ruling refocuses the litigation.  Anticipating that some of the issues in dispute may shift, or at least be streamlined through case management by Magistrate Judge Shwartz, the Court denies all remaining motions without prejudice.  The parties are directed to contact Judge Shwartz for a status conference.

August 29, 2006 /s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.